# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JORDAN BLACK,

                    **Plaintiff,**

v.

EMILY DE LA CRUZ, et al.,

                    **Defendants.**

Case No. 25-2036-DDC-ADM

## MEMORANDUM AND ORDER

Plaintiff, a transgender woman, alleges that defendants Emily De La Cruz and Kassiah Martin—employees of the Kansas Board of Cosmetology (KBC)—discriminated against her because she's transgender. As plaintiff tells it, defendants erected novel barriers to delay processing her application for a license to practice electrology in Kansas. Defendants have filed a Motion to Dismiss (Doc. 43). Plaintiff responded, but defendants didn't file a reply brief, and the time to do so has passed. As explained below, the court grants in part and denies in part defendants' motion.[1]

---

[1]     Plaintiff also has listed "Unknown Kansas Board of Cosmetology Subcommittee Members" as defendants in this case. Doc. 37 at 1. Plaintiff filed a Motion for Extension of Time (Doc. 46), asking for additional time to amend her pleading to name these defendants. Magistrate Judge Angel D. Mitchell denied that motion as moot after staying discovery in this case. Doc. 49 at 3. If plaintiff doesn't move for leave to amend her operative pleading to name these parties or move for leave for additional time to do so within 30 days of this Order, the court will require plaintiff to show cause why the court shouldn't dismiss these unnamed defendants for failing to serve them. *See* Fed. R. Civ. P. 4(m). The court's reference to "defendants" in this Order thus is limited to the two moving defendants—Ms. De La Cruz and Ms. Martin.

I.        Background

The court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to [plaintiff], the non-moving party." *Purgatory Recreation I, LLC v. United States*, 157 F.4th 1173, 1182 (10th Cir. 2025) (quotation cleaned up).

Plaintiff here is a transgender woman. Doc. 37 at 2 (Am. Compl. ¶ 8). She completed an electrogy program at a school in Kentucky. *Id.* (Am. Compl. ¶¶ 12–13). Through this schooling, plaintiff completed 600 hours of course work, which exceeds Kansas's 500-hour requirement to secure an electrology license. *Id.* at 3 (Am. Compl. ¶¶ 17–18). In February 2023, plaintiff began applying for an electrology license in Kansas. *Id.* (Am. Compl. ¶ 19). Her point of contact for the Kansas Board of Cosmetology (KBC) was De La Cruz, an administrative assistant. *Id.* (Am. Compl. ¶¶ 20–21). De La Cruz knew plaintiff is transgender because plaintiff called and spoke with a "very feminine" voice and also provided her driver's license which represents that she is male. *Id.* (Am. Compl. ¶¶ 24–26). De La Cruz informed plaintiff that Kentucky needed to certify her schooling hours. *Id.* (Am. Compl. ¶ 28). But the KBC had not required any such certification for two other recent graduates from the same Kentucky school that plaintiff had attended. *Id.* at 4 (Am. Compl. ¶¶ 29–33). In other words, De La Cruz invented "fictitious" requirements for plaintiff to receive a license, and she didn't impose those requirements on other applicants who aren't transgender. *Id.* (Am. Compl. ¶¶ 38–39).

Eventually, plaintiff's application made its way to Martin, the KBC's licensing director. *Id.* at 4–5 (Am. Compl. ¶¶ 37, 41–42). Martin also knew that plaintiff is transgender because plaintiff met with Martin in person and presented as a woman, even though her application indicated she's a man. *Id.* at 5 (Am. Compl. ¶¶ 43–44). Martin reiterated the requirement that De La Cruz had communicated, asserting that Kentucky must certify that plaintiff had completed

2

the requisite hours. *Id.* (Am. Compl. ¶¶ 46–47). Plaintiff learned that it wasn't possible to secure this type of certification from Kentucky. *Id.* at 6 (Am. Compl. ¶¶ 49–50). Martin thus denied plaintiff's application as incomplete. *Id.* (Am. Compl. ¶ 53). So, plaintiff asked Martin how two other students—persons who had attended the same school in Kentucky as plaintiff and weren't transgender—managed to secure Kansas electrology licenses. *Id.* (Am. Compl. ¶ 51). Martin never answered. *Id.* (Am. Compl. ¶ 52).

Plaintiff submitted an appeal to a licensing subcommittee. *Id.* (Am. Compl. ¶ 54). Martin intentionally didn't provide the subcommittee with all of plaintiff's materials. *Id.* at 7 (Am. Compl. ¶ 58). And Martin deprived plaintiff of the opportunity to communicate with the subcommittee. *Id.* at 14 (Am. Compl. ¶ 121). The subcommittee denied plaintiff's appeal and her application for a license. *Id.* at 7 (Am. Compl. ¶ 59).

In January 2024, after Martin no longer worked at the KBC, De La Cruz contacted plaintiff, informing her that her application was complete and she qualified to take the licensing exam. *Id.* (Am. Compl. ¶¶ 65, 67). De La Cruz couldn't explain what had changed with plaintiff's application. *Id.* at 7–8 (Am. Compl. ¶¶ 68–69). Plaintiff secured her electrology license in March 2024. *Id.* at 8 (Am. Compl. ¶ 71).

Plaintiff asserts two claims under 42 U.S.C. § 1983—one for equal protection and a second for procedural due process.

## II.    Legal Standard

Defendants' motion invokes Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. The court describes the governing legal standard for motions made under both of these rules.

3

### A. 12(b)(1)

Under Rule 12(b)(1), a defendant may move the court to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction and, as such, [they] must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party invoking federal jurisdiction—here, plaintiff—bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction").

Rule 12(b)(1) motions take one of two forms: a facial attack or a factual attack. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "A facial attack asserts that the allegations in the complaint, even if true, are insufficient to establish subject matter jurisdiction. By contrast, a factual attack on the complaint challenges the veracity of the allegations upon which subject matter jurisdiction depends." *Cnty. Comm'rs v. U.S. Dep't of the Interior*, 614 F. Supp. 3d 944, 951 (D.N.M. 2022) (quotation cleaned up). Here, defendants make a facial attack on jurisdiction. So, the court assumes the allegations in the Amended Complaint are true.

### B. 12(b)(6)

Under Rule 12(b)(6), a party may move to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it's "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III.    Analysis

Defendants' motion advances three distinct arguments for dismissal:  Eleventh Amendment immunity, mootness, and qualified immunity.  The court takes those arguments in turn.

### A.    Eleventh Amendment Immunity

Defendants assert Eleventh Amendment immunity.  Doc. 43 at 4–7.  But that form of immunity isn't theirs to assert.

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019).  "This immunity extends to arms of the state and to state officials who are sued

5

for damages in their official capacity." *Id.* Where properly raised, Eleventh Amendment immunity deprives the court of subject matter jurisdiction. *Id.* ("Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." (quotation cleaned up)). But "suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment." *Cornforth v. Univ. of Okla. Bd. of Regents*, 263 F.3d 1129, 1132 (10th Cir. 2001).

Here, plaintiff sues defendants in their individual capacities. Doc. 37 at 1; Doc. 47 at 3. So, Eleventh Amendment immunity doesn't protect them. *See Cornforth*, 263 F.3d at 1132. Perhaps predicting this outcome, defendants also argue that state law requires Kansas to indemnify its employees. Doc. 43 at 6. So, defendants argue, plaintiff essentially is suing Kansas. *See id.* Circuit precedent squarely forecloses this argument. A "state cannot extend its sovereign immunity to its employees by voluntarily assuming an obligation to indemnify them." *Cornforth*, 263 F.3d at 1133. Defendants thus may not assert Eleventh Amendment immunity. And the court thus denies their request to dismiss on this basis.

### B.    Standing

Defendants next assert that plaintiff lacks standing to bring her claims because, by plaintiff's own admission, she now has secured her electrogy license. Doc. 43 at 7–10. The court disagrees, for the most part.

"Article III of the Constitution permits federal courts to decide only 'Cases' or 'Controversies.'" *Laufer v. Looper*, 22 F.4th 871, 876 (10th Cir. 2022) (quoting U.S. Const. art. III, § 2). "'To establish a case or controversy, a plaintiff must possess standing to sue.'" *Id.* (quoting *S. Furniture Leasing, Inc. v. YRC, Inc.*, 989 F.3d 1141, 1145 (10th Cir. 2021)). "For Article III standing, a plaintiff must have (1) 'suffered an injury in fact,' (2) that is 'fairly

traceable to the challenged action of the defendant,' and (3) that is likely to be 'redressed by a favorable decision.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Here, plaintiff has standing to assert her claims for compensatory and punitive damages. Even though she now has received her electrology license, she retains an interest in securing damages based on the constitutional violation she allegedly sustained. *See Day v. Bond*, 500 F.3d 1127, 1137 (10th Cir. 2007) ("[I]t is axiomatic that a plaintiff has standing to assert that his or her First Amendment rights have been violated."). Likewise, she has standing to seek damages for income she was unable to earn for the time defendants allegedly wrongfully denied her license. *See* Doc. 37 at 9 (Am. Compl. ¶ 84); *see Lippoldt v. Cole*, 468 F.3d 1204, 1217 (10th Cir. 2006) ("By definition claims for past damages cannot be deemed moot."). Stated simply, plaintiff retains a present interest—standing—in winning money damages to redress her injuries. *See Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1214 (10th Cir. 1999) ("Damages are available for violations of § 1983 to compensate persons for injuries caused by the deprivation of constitutional rights." (quotation cleaned up)). The court thus declines to dismiss plaintiff's claims for damages on standing grounds.

But the Amended Complaint also requests injunctive relief. Doc. 37 at 16. Plaintiff lacks standing to assert a claim seeking this form of relief because plaintiff has secured her electrology license. *Id.* at 8 (Am. Compl. ¶ 71). There's nothing to enjoin. Plaintiff hasn't alleged that she's likely to suffer a "sufficiently imminent and substantial" future injury. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021). So, she has no standing to seek injunctive relief. As such, the court dismisses without prejudice plaintiff's claims to the extent they seek injunctive relief. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) (instructing that dismissals for lack of jurisdiction "must be without prejudice").

The court now turns to defendants' qualified-immunity defense.

## C.    Qualified Immunity

Defendants next argue that qualified immunity protects them from suit.  The court begins with an overview of the law governing qualified immunity.  Then, the court applies this law to each one of plaintiff's claims.

### 1.    Governing Law

"When a defendant asserts qualified immunity at the motion to dismiss phase, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the (1) defendant plausibly violated their constitutional rights, and that (2) those rights were clearly established at the time.'" *Brown v. City of Tulsa*, 124 F.4th 1251, 1265 (10th Cir. 2025) (quotation cleaned up) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)).  That's so because the "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Once a defendant has "asserted the defense of qualified immunity, the burden is on Plaintiffs to establish their right to proceed." *Matthews v. Bergdorf*, 889 F.3d 1136, 1143 (10th Cir. 2018).

A constitutional right is clearly established when, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.  In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quotation cleaned up).  A plaintiff can't defeat qualified immunity "simply by alleging violation of extremely abstract rights," *White v. Pauly*, 580 U.S. 73, 79 (2017) (quotation cleaned up), and

8

a court shouldn't "define clearly established law at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

As the court explains, below, plaintiff has carried her burden to overcome defendants' assertions of qualified immunity for her equal-protection claim. But plaintiff hasn't shouldered her burden on her procedural-due-process claim.

### 2.     Equal Protection

Recall the crux of plaintiff's Complaint: Defendants discriminated against her based on her transgender status by refusing to process her application for an electrology license and imposing more onerous barriers on her than other, similarly situated applicants.

### a.     Constitutional Violation

Taken as true, the Amended Complaint sufficiently alleges a violation of plaintiff's equal-protection rights. Our Circuit has held that discrimination on the basis of transgender status is discrimination on the basis of sex. *Griffith v. El Paso County*, 129 F.4th 790, 811–12 (10th Cir. 2025). So, by alleging defendants discriminated against her because she is transgender, plaintiff "has plausibly alleged" that defendants "purposefully discriminate[d] on the basis of sex." *Id.* at 811 (quotation cleaned up). "Under these circumstances, heightened scrutiny applie[s]." *Id.* at 812. To survive this heightened scrutiny—commonly called intermediate scrutiny—"a gender-based classification needs an exceedingly persuasive justification." *Free the Nipple-Fort Collins v. City of Fort Collins*, 916 F.3d 792, 799 (10th Cir. 2019) (quotation cleaned up). "The classification must serve important governmental interests through means substantially related to achieving those objectives." *Id.* (quotation cleaned up).

Defendants' conduct, as plaintiff has alleged it, can't pass constitutional muster. Plaintiff alleges that defendants refused to process her license application for nearly a year because she is transgender. Doc. 37 at 9, 12 (Am. Compl. ¶¶ 86, 105). She further alleges that defendants

9

didn't impede similarly situated applicants who were not transgender. *Id.* at 4, 6, 11 (Am. Compl. ¶¶ 29, 51, 103). Accepted as true, these allegations provide the basis for a finding that defendants treated plaintiff unfavorably because of her transgender status. The Supreme Court long has held that "a bare desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *Romer v. Evans*, 517 U.S. 620, 634 (1996) (quotation cleaned up). That is, bald and unjustified discrimination can't survive even rational-basis review. *See id.* So, as alleged here, defendants clearly lacked "an exceedingly persuasive justification" for treating plaintiff differently. *Free the Nipple*, 916 F.3d at 799 (quotation cleaned up). Plaintiff thus has stated a plausible § 1983 claim that defendants violated the Fourteenth Amendment Equal Protection Clause.

### b.    Clearly Established

Binding precedent clearly establishes that intentionally and arbitrarily treating transgender people differently violates the Equal Protection Clause. At least two cases supplied clear notice that defendants' conduct—as plaintiff has alleged it—violated clearly established federal law.[2]

Nearly 70 years ago, the Supreme Court held that states "cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 238–39 (1957). In regulating professional licenses, states "can require high standards of qualification, such as good moral character or proficiency[,]" but "any qualification must have a rational connection with the applicant's fitness or capacity[.]" *Id.* at

---

[2]    The Circuit decided *Griffith* after the events underlying this lawsuit. 129 F.4th 790 (published in February 2025). So, defendants didn't have clear notice that courts would apply heightened scrutiny to differential treatment of transgender people. All the same, as the court explains, even without this notice about heightened scrutiny, defendants' alleged conduct violated clearly established law.

239.  "Obviously an applicant could not be excluded merely because" of her political affiliation, race, or religion.  *Id.*  Nor can a state exclude an applicant when the state's "action is invidiously discriminatory."  *Id.  Schware* provided defendants with notice that they couldn't deny plaintiff a professional license based on invidious discrimination, or based on reasons unconnected to her fitness to practice electrogy.

More recently, our Circuit has explained "the clearly established rule prohibiting intentional, arbitrary and unequal treatment of similarly situated individuals[.]"  *A.N. ex rel Ponder v. Syling*, 928 F.3d 1191, 1198 (10th Cir. 2019).  In *A.N.*, the Circuit explained that this rule applies with "obvious clarity" in circumstances of irrational differential treatment.  *Id.* There, plaintiff alleged that defendants "publicly disclose[d]" her arrest records "even though New Mexico law prohibits the disclosure of such information for all children under the age of eighteen."  *Id.* at 1196.  Plaintiff also alleged that defendants had treated her differently than similarly situated minors.  *Id.*  Our Circuit affirmed denial of qualified immunity, explaining that the Equal Protection Clause's prohibition against irrational differential treatment applied with "obvious clarity" and that the rule "is not extremely abstract or imprecise . . . , but rather is relatively straightforward and not difficult to apply."  *Id.* at 1198–99.  *A.N.* thus gave defendants fair notice.  The Constitution forbade treating plaintiff differently, arbitrarily and intentionally, based on her transgender status.

In short, defendants' alleged conduct violated plaintiff's clearly established rights to equal protection.  The court thus denies defendants' request for qualified immunity against plaintiff's equal-protection claim.

The court reaches a different result, however, for plaintiff's claim for procedural-due-process.  The court explains why, next.

### 3.    Due Process

#### a.    Constitutional Violation

"Procedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property interests within the meaning of the Due Process Clause of the Fourteenth Amendment." *Stepp v. Lockhart*, No. 25-7038, 2026 WL 586738, at *8 (10th Cir. Mar. 3, 2026) (published) (quotation cleaned up). "To assess whether an individual was denied procedural due process, courts must engage in a two-step inquiry: (1) did the individual possess a protected interest such that the due process protections were applicable; and, if so, then (2) was the individual afforded an appropriate level of process." *Id.* (quotation cleaned up). Take those steps in turn.

Plaintiff possessed a protected property interest. "A property interest exists if discretion is limited by the procedures in question, that is, whether the procedures, if followed, require a particular outcome." *JLPR, LLC v. Utah Dep't of Ag. & Food*, No. 21-CV-436 TS, 2022 WL 2230280, at *3 (D. Utah May 16, 2022) (compiling Tenth Circuit cases). Saying it another way, a "benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Schulz v. City of Longmont*, 465 F.3d 433, 444 (10th Cir. 2006) (quotation cleaned up). Plaintiff alleges that she was "entitled" to an electrology license, implying the KBC had no discretion to deny her one. Doc. 37 at 10 (Am. Compl. ¶ 91). Indeed, Kansas law requires the KBC to issue an electrology license if an applicant meets all requirements. *See* Kan. Stat. Ann. § 65-1904b(a) (explaining that a qualifying applicant "shall be granted a license entitling the person to practice in this state" if the applicant meets all requirements). Plaintiff alleges that she met all requirements for this license. Doc. 37 at 10 (Am. Compl. ¶ 91). The court accepts this allegation as true. This conclusion takes care of step one.

12

Now, the court asks whether plaintiff was "afforded an appropriate level of process." *Stepp*, 2026 WL 586738, at *8 (quotation cleaned up). "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation cleaned up). "Impartiality of the tribunal is an essential element of due process." *Riggins v. Goodman*, 572 F.3d 1101, 1112 (10th Cir. 2009).

Plaintiff alleges that De La Cruz "intentionally hindered" and "refused to process" plaintiff's license application. Doc. 37 at 10 (Am. Compl. ¶ 93). She also alleges that De La Cruz created "fictitious requirements" for plaintiff to secure her license and effectively delayed plaintiff's license by more than a year. *Id.* (Am. Compl. ¶ 94). And, plaintiff alleges, De La Cruz misrepresented her application to the reviewing subcommittee, effectively denying her a fair hearing. *Id.* (Am. Compl. ¶ 95). These allegations suffice. They establish that De La Cruz allegedly contributed to depriving plaintiff of a timely and impartial review of her license application.

The court reaches the same result for defendant Martin. Martin allegedly conjured unreasonable and novel requirements for plaintiff's application. *Id.* at 5–6, 13 (Am. Compl. ¶¶ 47–51, 119). Martin didn't provide the reviewing subcommittee with all of plaintiff's application materials. *Id.* at 7 (Am. Compl. ¶ 58). And Martin denied plaintiff "the opportunity to talk, explain the situation, or write a letter to the" subcommittee. *Id.* at 14 (Am. Compl. ¶ 121). Again, when viewed in the light most favorable to plaintiff, these allegations state a plausible procedural-due-process claim against Martin. They allege that Martin deprived plaintiff of an impartial review of her application and deprived her of the opportunity to be heard by the subcommittee.

The court now progresses to the second prong of the qualified-immunity inquiry: whether defendants violated a clearly established right.

### b.       Clearly Established

Plaintiff has failed to shoulder her burden on this second part, one requiring her to show that defendants violated her clearly established rights to procedural due process when they conjured novel requirements to apply to her application and delayed its consideration. Plaintiff cites six cases to help her cause. None is availing.

Plaintiff first cites *Schware v. Board of Bar Examiners*, 353 U.S. 232. Doc. 47 at 8. As the court already has explained, *Schware* held that states may not exclude persons from occupations "in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment." 353 U.S. at 238–39. But *Schware* says nothing about procedural due process. It merely holds that a state's qualification for an occupation "must have a rational connection with the applicant's fitness or capacity[.]" *Id.* at 239. This statement of law isn't about procedural due process. It's about substantive due process—*i.e.*, the government can't deprive "a person of life, liberty, or property in a manner so arbitrary it shocks the judicial conscience[.]" *Stepp*, 2026 WL 586738, at *18. So, *Schware* can't "clearly establish" the contours of plaintiff's right to procedural due process for the simple reason that it's not about procedural due process.

Plaintiff next cites *Barry v. Barchi*, 443 U.S. 55 (1979). Doc. 47 at 8. In *Barry*, a state agency suspended a horse trainer's license pending a hearing. 443 U.S. at 59–61. The Supreme Court held that the trainer had a protected property interest in his license. *Id.* at 64. It explained that the agency's prehearing suspension of the license comported with due-process requirements, but ultimately, the Court held that the agency had deprived plaintiff of due process because it didn't sponsor a reasonably prompt hearing after the suspension. *Id.* at 65–66. *Barry* gets

14

plaintiff closer than *Schware* because at least it's about the right that plaintiff asserts. But it's still "too factually dissimilar to serve as the clearly established law." *Stepp*, 2026 WL 586738, at \*20. *Barry* was about suspending a license already in effect—not about an application for a license. What's more, plaintiff doesn't allege an inordinate delay in having the subcommittee review her application. At best, *Barry* clearly establishes that a professional has a property interest in an existing occupational license. But it doesn't speak directly to "the violative nature of the particular conduct at issue" here. *A.N.*, 928 F.3d at 1197 (quotation cleaned up). So, it can't clearly establish the law that defendants purportedly violated.

Plaintiff's next three cases—*FDIC v. Mallen*, 486 U.S. 230 (1988); *Guttman v. Khalsa*, 669 F.3d 1101 (10th Cir. 2012); and *Stidham v. Peace Officers Standards & Training*, 265 F.3d 1144 (10th Cir. 2001)—all suffer the same problem. Doc. 47 at 8 (listing cases). Each case recognizes that a professional license can constitute a property interest and that hampering such a license requires due process. But none of these cases involves applying for a professional license. That is, plaintiff has failed to pinpoint a case holding that a delay in processing an application for a professional license violates procedural due process. Nor has plaintiff located a case suggesting that imposing new requirements on an applicant or meddling with an applicant's ability to secure a license violates procedural due process. In short, plaintiff has failed to cite any case about "the violative nature of the particular conduct at issue[.]" *A.N.*, 928 F.3d at 1197 (quotation cleaned up).

As a last resort, plaintiff cites *Mathews v. Edlridge*, 424 U.S. 319. Doc. 47 at 8. As plaintiff acknowledges, *Mathews* establishes a generic framework for determining the quantum and kind of process that's due. But it says nothing about professional licenses, applications, or the constitutional violations alleged in this case. *Mathews* is a perfect example of the type of

15

case that defines "clearly established law at too high a level of generality." *Stepp*, 2026 WL 586738, at \*7 (quotation cleaned up). Its uber generic statements of law don't clearly establish the law for this case because *Mathew*'s facts aren't materially similar to this case. Nor do they apply with obvious clarity. *See id.* ("The relevant precedent is considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." (emphasis in original) (quotation cleaned up)).

Simply put, existing law didn't put defendants on clear notice that they were violating plaintiff's procedural-due-process rights by imposing artificial barriers to her license, failing to timely process her application, and meddling with her ability to secure her license. The court thus grants defendants' request for qualified immunity against plaintiff's claim for procedural due process. The court dismisses plaintiff's procedural-due-process claim with prejudice because any amendment can't cure plaintiff's failure to carry her burden to show that the alleged violation was clearly established. *See Lybrook v. Members of Farmington Mun. Schs. Bd. of Educ.*, 232 F.3d 1334, 1342 (10th Cir. 2000) (finding no abuse of discretion where district court dismissed claim with prejudice after granting qualified immunity).

## IV.    Conclusion

Plaintiff lacks standing for her request for injunctive relief, so the court dismisses that claim for relief. The court also grants defendants' request for qualified immunity against plaintiff's procedural-due-process claim. The court thus dismisses this claim as well. The court otherwise denies defendants' Motion to Dismiss (Doc. 43).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Emily De La Cruz and Kassiah Martin's Motion to Dismiss (Doc. 43) is granted in part and denied in part, as set out in full in this Order.

16

**IT IS SO ORDERED.**

**Dated this 26th day of March, 2026, at Kansas City, Kansas.**

<u>**s/ Daniel D. Crabtree**</u>
**Daniel D. Crabtree**
**United States District Judge**