**IN THE UNITED STATES DISTRICT COURT OF KANSAS**

| | | |
|---|---|---|
| JORDAN BLACK | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 2:25-CV-02036 |
| v. | ) | |
| | ) | Division_____ |
| EMILY DE LA CRUZ | ) | |
| | ) | |
| KASSIAH MARTIN, | ) | |
| | ) | |
| CHRISTINE BURGARDT, | ) | REQUEST FOR JURY TRIAL |
| | ) | |
| MARY BLUBAUGH, | ) | |
| | ) | |
| NICOLE HINES, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff, Jordan Black by and through her attorney, and for her cause of action against Defendants Emily De La Cruz, Kassiah Martin, Christine Burgardt, Mary Blubaugh, and Nicole Hines ("Defendants"), acting in their individual capacities, states as follows:

**Parties and Jurisdiction**

1. Plaintiff is a citizen of the Unites States, residing in Wyandotte County, Kansas.

2. The Kansas Board of Cosmetology ("KBC") is a state agency of the State of Kansas.

3. At all times pertinent to this Complaint for Damages, Defendants Christine Burgardt, Mary Blubaugh, and Nicole Hines were members of the board serving on the KBC and specifically part of the licensing subcommittee.

1

4. At all times pertinent to this Complaint for Damages, Defendants De La Cruz and Martin were employees of the KBC.

5. All counts in this Complaint are brought under 42 U.S.C. § 1983, a federal statute, for violations of Plaintiff's rights as protected by the Fourteenth Amendment of the United States Constitution.

6. Some, if not all, of the alleged unlawful practices took place in the State of Kansas.

7. Jurisdiction and venue are proper in the District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 13391.

## General Allegations Common to All Counts

8. Plaintiff is a transgender woman, meaning she does not comport with traditional sex stereotypes of a person assigned the sex of male at birth.

9. Plaintiff began her transition several years ago and lives her life as a woman.

10. Plaintiff's middle name is Paul, which often alerts people that she is transgender.

11. Plaintiff is a veteran.

12. Plaintiff graduated from the Southeastern School of Laser & Electrology ("Southeastern") in Kentucky with training as an electrologist.

13. Plaintiff completed the program at Southeastern in January of 2023.

14. Plaintiff maintained her Kansas residency before, during, and after her schooling.

15. Prior to starting her education at Southeastern, Plaintiff contacted a KCB representative to ensure she could receive her Kansas license even though she planned to attend a Kentucky school.

16. The KBC employee assured Plaintiff that attending an out of state school would not prohibit her from obtaining a Kansas license to practice electrology.

2

17. For Plaintiff to receive a Kansas electrology license, she must have completed 500 school hours or 1,000 apprenticeship hours, had an active state license in another state, and pass a twenty-question open book exam.

18. Plaintiff completed a 600-hour course with Southeastern for electrology, which is well above Kansas's 500 required hours.

### Defendant Emily De La Cruz

19. Plaintiff emailed the KBC in early February 2023 to begin the process of applying for her Kansas license.

20. When Plaintiff first contacted the KBC, Defendant De La Cruz was her point of contact.

21. De La Cruz was the administrative assistant who collected all of Plaintiff's documentation.

22. Collecting documentation was part of De La Cruz's job responsibilities with the KBC.

23. Plaintiff's electrolysis license application required she provide her driver's license.

24. Due to Kansas laws, Plaintiff's gender marker on her driver's license much match the gender she was assigned at birth, male.

25. Plaintiff also marked on her application the male gender because Plaintiff thought her application must match her driver's license.

26. Plaintiff called De La Cruz to discuss her application, at which time it became evident Plaintiff is transgender because her voice is very feminine.

27. After collecting Plaintiff's documents, De La Cruz told Plaintiff that there was an additional rule for training programs completed outside the State of Kansas.

28. De La Cruz alleged the State of Kentucky, or a state agency within Kentucky, needed to send verification that Plaintiff had completed the necessary training hours to De La Cruz to finish Plaintiff's application.

29. In the two years prior to Plaintiff applying to KBC for her electrology license, two other students from Southeastern received their licenses, who were not required to produce additional verification from a state agency.

30. Southeastern provided the verification of hours completed, which satisfied KBC's requirements for the other two graduates.

31. Neither of the other two applicants are transgender.

32. Both of the other applicants were permitted to take the licensing exam and granted licenses without undue delay.

33. Plaintiff asked De La Cruz why she, Plaintiff, was required to produce additional verification from a state agency.

34. De La Cruz did not provide an answer.

35. Plaintiff had also sent De La Cruz proof of her license in the State of Iowa as proof in support of the requirement of being licensed in another state prior to applying for licensure in the State of Kansas.

36. De La Cruz refused to acknowledge receipt of Plaintiff's Iowa license, which Plaintiff had sent to De La Cruz multiple times.

37. After Plaintiff emailed De La Cruz for a third time with the same information regarding her Iowa license, the case was forwarded to the Licensing Director, Kassiah Martin.

38. While Plaintiff's application was with De La Cruz, De La Cruz created additional barriers to Plaintiff for receiving her license by requiring Plaintiff meet additional fictitious alleged requirements for licensure.

39. The additional made up requirements had not been required of other applicants.

40. Defendant De La Cruz further deliberately ignored legitimately required information Plaintiff provided to her for licesnure.

### Defendant Kassiah Martin

41. After De La Cruz was removed from working the application, Defendant Martin was assigned the file.

42. Martin was at all times relevant to this Complaint for Damages, the Licensing Director for the KBC.

43. Plaintiff went to the KCB office in Topeka and personally met Martin to request information about her application.

44. Plaintiff appeared extremely feminine and again showed to Defendants that she presented as a woman, rather than a man as her application indicated.

45. Martin finally accepted verification of Plaintiff's Iowa license after Plaintiff emailed Martin the information; Plaintiff was required to send the same information to a KBC employee four times in total before it was finally accepted it.

46. Martin further reiterated to Plaintiff that the State of Kentucky must submit a formal notice that Plaintiff completed the required training hours.

47. Martin alleged verification from the school would not be accepted because training verification would allegedly only be accepted from a government agency in the State of Kentucky.

48. Plaintiff worked with Southeastern and her Veteran's Affairs case worker in attempt to obtain verification from the Kentucky Commission Board of Proprietary Education ("KCBPE").

49. KCBPE informed Plaintiff through Southeastern that certification of hours was not something KCBPE could provide, and referred Plaintiff back to Southeastern as the school that provided her training.

50. Upon receiving the foregoing information from KCBPE, Plaintiff informed Martin that it was not possible to receive training certification through the state of Kentucky, as their procedures required the certification to come from the school Plaintiff attended that is licensed with the state.

51. Additionally, Plaintiff, who already knew that two other non-transgender students from Southeastern had been granted licenses by the State of Kansas, asked Martin why the KBC had granted the two other recent students from Southeastern their Kansas licenses without verification from a state agency in Kentucky, but imposed such a requirement on Plaintiff.

52. Martin never provided an answer.

53. Martin continued to deny Plaintiff's license application as incomplete, citing the same rule that the training certification must come from the state.

54. On May 25, 2023, Plaintiff requested an appeal with the licensing subcommittee to have her application reviewed by someone other than Martin.

**Licensing Subcommittee Defendants**

55. There are three members of the licensing subcommittee, Defendants Burgardt, Blubaugh, and Hines.

56. The three Licensing Subcommittee members reviewed Plaintiff's application.

57. Martin allegedly provided them with all of the information on Plaintiff's application to make a decision.

6

58. Upon information and belief, Martin intentionally did not provide the Subcommittee all of the information Plaintiff had provided and instead provided an incomplete application.

59. Defendants Burgardt, Blubaugh, and Hines denied Plaintiff's appeal, thus denying her application for a Kansas Cosmetology License.

60. Had Defendants Burgardt, Blubaugh, and Hines approved Plaintiff's application, she would have then been permitted to sit for a twenty-one-question examination.

61. Upon passing such exam, Plaintiff would have been given a license to practice as an electrologist in the State of Kansas.

62. As a result of Defendant Burgardt, Blubaugh, and Hines's denial of Plaintiff's application, Plaintiff was not permitted to sit for the twenty-one-question exam.

63. Defendants Burgardt, Blubaugh, and Hines violated Plaintiff's rights under the United States Constitution and unjustly denied Plaintiff a license under color of state law in 2023.

**Obtaining License**

64. Plaintiff continued to contact KCB every few months throughout 2023 to see if there was a change to her application status.

65. In or around January 2024, Plaintiff discovered Martin no longer worked for the KCB.

66. Plaintiff followed up on her license application through a different source after not being able to contact Martin.

67. After Plaintiff followed up, she was surprised when De La Cruz answered and informed her that Plaintiff's application was complete and that she could now sit for her licensing exam.

68. Plaintiff asked De La Cruz what changed regarding her application.

7

69. De La Cruz did not provide a reason for the change in attitude towards Plaintiff and her application for license.

70. Plaintiff provided De La Cruz the completed exam on January 30, 2024.

71. On March 3, 2024, Plaintiff finally received her electrology license to practice in the State of Kansas.

72. Upon completion of her classes at Southeastern, Plaintiff had received an offer of employment with Roxanne Alamos in Kansas City, Kansas in anticipation that she would easily and quickly be able to receive her license from the State of Kansas.

73. Ms. Alamos was one of the students who attended Southeastern and received her Kansas licensure without issue.

74. Plaintiff was denied employment opportunities in her chosen field, denied equal protection under the law, and denied due process of law by Defendants' intentional refusal to process Plaintiff's application.

75. Defendants intentionally refused to perform their ministerial duty to process Plaintiff's application for licensure before ultimately allowing Plaintiff to sit for the licensing exam only after Defendant Martin was no long on the KBC.

76. Plaintiff was forced to take employment as a security guard because she could not enter her field of work.

77. Plaintiff was forced to take employment that paid her less than what she would have made had she been able to work in her chosen field as an electrologist.

78. Because of the delay in licensing Plaintiff, she went fifteen (15) months without being able to work in her skill area.

79. Plaintiff was damaged by Defendants' intentional violation of her constitutional rights and intentional deprivation of her civil rights.

### COUNT I – DEFENDANT EMILY DE LA CRUZ - EQUAL PROTECTION

80. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs.

81. Plaintiff met the listed requirements for a Kansas electrology license.

82. Plaintiff applied for said license in February 2023.

83. However, Defendant De La Cruz refused to advance Plaintiff's application for licensure under color of state law and denied Plaintiff the opportunity to sit for the exam for a year.

84. The delay in receiving her license has damaged Plaintiff financially through lost income and career growth.

85. Along with the financial stressors, Plaintiff has suffered humiliation, embarrassment, degradation, and loss of self-esteem as a result of having her constitutional and civil rights violated by Defendant.

86. Defendant refused to perform her ministerial duty of processing Plaintiff's licensure application solely because Plaintiff is transgender.

87. Defendant denied Plaintiff the equal protection of the laws under the Fourteenth Amendment to the United States Constitution while acting under color of state law.

88. As shown by the foregoing, Defendant's conduct was willful, wanton, and malicious, and showed completed indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other agencies from the conduct in the future.

WHEREFORE, Plaintiffs requests that the Court enter judgement in her favor and against the Defendant for economic damages including but not limited to compensatory damages, punitive damages, for reasonable attorney fees and costs incurred herein, for pre- and post-judgement interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

**COUNT II – DEFENDANT KASSIAH MARTIN -
EQUAL PROTECTION**

89. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs.

90. Plaintiff met the listed requirements for a Kansas electrology license.

91. Defendant Martin required Plaintiff to produce certification from a Kentucky state agency related to training hours knowing that said agency would not and could not certify Plaintiff's training hours, and that such information would have to come from Plaintiff's school.

92. Defendant Martin refused to accept a certification of Plaintiff's training hours from said school, which was the one entity that could certify Plaintiff's training.

93. Other graduates from the same school in Kentucky have received Kansas cosmetology licenses without the requirement of certification of training hours from a Kentucky state agency; said applicants were granted Kansas cosmetology licenses based upon certification from the same Kentucky school attended by Plaintiff.

94. Defendant Martin intentionally created extra barriers for Plaintiff not required of other applicants, which allegedly rendered Plaintiff's application "incomplete."

95. Defendant Martin intentionally impeded Plaintiff's application because Plaintiff is transgender.

96. Defendant Martin intentionally denied Plaintiff the opportunity to sit for the twenty-question exam for a period of approximately one year under color of state law.

97. The delay in receiving her license has damaged Plaintiff financially through lost income, lost opportunity, and diminished career growth.

98. Along with the financial stressors, Plaintiff is mentally wounded and exhausted from having to provide information that was impossible to gather to an unyielding board.

99. Plaintiff worked hard and put in 600 hours of training to pursue her chosen career path and was prohibited by Defendant under color of state law because she is transgender.

100.    Defendant Martin denied Plaintiff the equal protection of the laws under the Fourteenth Amendment to the United States Constitution while acting under color of state law.

101.    As shown by the foregoing, Defendant Martin's conduct was willful, wanton, and malicious, and showed completed indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an aware of punitive damages in an amount sufficient to punish Defendants or to deter them and other agencies from the conduct in the future.

WHEREFORE, Plaintiffs requests that the Court enter judgement in her favor and against the Defendant for economic damages including but not limited to compensatory damages, punitive damages, for reasonable attorney fees and costs incurred herein, for pre- and post-judgement interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT III – DEFENDANT CHRISTINE BURGARDT - EQUAL PROTECTION

102.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs.

103.    Plaintiff met the listed requirements for a Kansas electrology license.

104.    Defendant Burgardt denied Plaintiff's application over an impossible requirement which previous applicants were not required to meet.

105.    Plaintiff's full name was on the application and other information in the file alerted Defendant Burgardt of her transgender status.

106.    The delay in receiving her license has damaged Plaintiff financially through loss of income and career growth.

107.    Along with the financial stressors, Plaintiff is mentally wounded and exhausted from having to provide information that was impossible to gather to an unyielding board.

108.    Plaintiff worked hard and put in 600 hours of training to pursue her chosen career path and was prohibited by Defendant Burgardt under color of state law because she is transgender.

109.    Defendant Burgardt denied Plaintiff the equal protection of the laws under the Fourteenth Amendment to the United States Constitution while acting under color of state law.

110.    As shown by the foregoing, Defendant Burgardt's conduct was willful, wanton, and malicious, and showed completed indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an aware of punitive damages in an amount sufficient to punish Defendants or to deter them and other agencies from the conduct in the future.

WHEREFORE, Plaintiffs requests that the Court enter judgement in her favor and against the Defendant for economic damages including but not limited to compensatory damages, punitive damages, for reasonable attorney fees and costs incurred herein, for pre- and post-judgement interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT IV – DEFENDANT MARY BLUBAUGH - EQUAL PROTECTION

111. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs.

112. Plaintiff met the listed requirements for a Kansas electrology license.

113. Defendant Blubaugh denied Plaintiff's application over an impossible requirement which previous applicants were not required to meet.

114. Plaintiff's full name was on the application and other information in the file alerted Defendant Blubaugh of her transgender status.

115. The delay in receiving her license has damaged Plaintiff financially through loss of income and career growth.

116. Along with the financial stressors, Plaintiff is mentally wounded and exhausted from having to provide information that was impossible to gather to an unyielding board.

117. Plaintiff worked hard and put in 600 hours of training to pursue her chosen career path and was prohibited by Defendant Blubaugh under color of state law because she is transgender.

118. Defendant Blubaugh denied Plaintiff the equal protection of the laws under the Fourteenth Amendment to the United States Constitution while acting under color of state law.

13

119. As shown by the foregoing, Defendant Blubaugh's conduct was willful, wanton, and malicious, and showed completed indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an aware of punitive damages in an amount sufficient to punish Defendants or to deter them and other agencies from the conduct in the future.

WHEREFORE, Plaintiffs requests that the Court enter judgement in her favor and against the Defendant for economic damages including but not limited to compensatory damages, punitive damages, for reasonable attorney fees and costs incurred herein, for pre- and post-judgement interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## COUNT V – DEFENDANT NICOLE HINES - EQUAL PROTECTION

120. Plaintiff hereby re-alleges and incorporates by reference the allegations contained in all preceding paragraphs.

121. Plaintiff met the listed requirements for a Kansas electrology license.

122. Defendant Hines denied Plaintiff's application over an impossible requirement which previous applicants were not required to meet.

123. Plaintiff's full name was on the application and other information in the file alerted Defendant Hines of her transgender status.

124. The delay in receiving her license has damaged Plaintiff financially through loss of income and career growth.

125. Along with the financial stressors, Plaintiff is mentally wounded and exhausted from having to provide information that was impossible to gather to an unyielding board.

14

126.    Plaintiff worked hard and put in 600 hours of training to pursue her chosen career path and was prohibited by Defendant Hines under color of state law because she is transgender.

127.    Defendant Hines denied Plaintiff the equal protection of the laws under the Fourteenth Amendment to the United States Constitution while acting under color of state law.

128.    As shown by the foregoing, Defendant Hines's conduct was willful, wanton, and malicious, and showed completed indifference to or conscious disregard for the rights of others, including the rights of Plaintiff, thus, justifying an aware of punitive damages in an amount sufficient to punish Defendants or to deter them and other agencies from the conduct in the future.

WHEREFORE, Plaintiffs requests that the Court enter judgement in her favor and against the Defendant for economic damages including but not limited to compensatory damages, punitive damages, for reasonable attorney fees and costs incurred herein, for pre- and post-judgement interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

### Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in the U.S. District Court of the Kansas in Topeka on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,

**MISSOURI KANSAS QUEER LAW**

 /s/ Arden Pearson

15

Arden Pearson, KS Bar #29240
103 W 26th Ave. Suite 170
North Kansas City, MO 64130
Tel: (816) 775-1980
arden@mokanqueerlaw.com
**ATTORNEY FOR PLAINTIFF**

16